# GLORIA PROBYN GIFFORD

## V.

# HARRY DENNIS

Record No. 820814

October 11, 1985

Present: All the Justices

*Robert G. Jones* for appellants.
*Burt H. Whitt (Kaufman & Canoles*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

By his bill of complaint, Harry Dennis claims to be the sole beneficial owner of a 62.5 percent interest in an office building in the City of Newport News (the property). The defendant, Gloria

Gifford (formerly Gloria Probyn), relying primarily upon the language of a deed, claims ownership of three-fourths of that interest. The trial court found a resulting trust in favor of Dennis, and Gifford appeals. Thus, the sole issue in this appeal is whether the evidence supports the trial court's finding.

In 1975, Dennis and Gifford were engaged to be married. Dennis, an oral surgeon, was living in Washington, D.C., and teaching at a medical school in the area. At Gifford's urging, Dennis agreed to enter into the private practice of his profession and subsequently moved to the Tidewater area of Virginia. He contracted to purchase a 62.5 percent interest in an office building in Newport News to use in his practice. Gifford volunteered to assist him in this venture by making her credit and collateral available to Dennis' lenders.

The purchase price for the property was $88,250. Dennis paid $1,000 when the purchase contract was executed. The remainder of the purchase price was financed by three promissory notes made by Dennis and Gifford: a $51,000 note payable to Bank of Virginia, secured by a first deed of trust on the property; a $30,250 note payable to one of the sellers, secured by a second deed of trust; and a $35,000 note payable to First and Merchants National Bank (F & M), secured by certain corporate stock Gifford pledged as collateral. From a portion of the proceeds of the F & M note, Dennis paid the balance of the purchase price and all closing costs. (Dennis used the remainder of the proceeds from this loan to finance the establishment of his practice.)

The property was conveyed

unto Gloria Probyn, as to an undivided one-half interest and Harry Dennis, . . . and Gloria Probyn, . . . as joint tenants with rights of survivorship as at common law as to an undivided one-half interest, each one-half share to be held between the [grantees] as tenants in common.

Dennis testified that he asked Gifford at the time of closing "why her name was on the deed" and that Gifford replied "she needed security because of the collateral she had put up for the F and M loan and . . . the Bank of Virginia had asked for her financial statement and she wanted protection." Gifford assured Dennis that her name would be removed from the deed "without a doubt, as soon as she got her stocks back and the bank okayed [Dennis']

financial statements." Dennis also testified that he "didn't understand the wording" of the deed and asked Gifford's lawyer "on several occasions if [he] was really purchasing this property." According to Dennis, the lawyer responded that "Gloria's name would be coming off . . . as soon as the stocks were satisfied and she got them back."

After the closing, Gifford became apprehensive about the risks she had incurred by pledging her stock and signing the notes. Consequently, she persisted in telling Dennis that she wanted more "protection," and to this end, had her lawyer draft two agreements.

The first agreement, dated May 10, 1975 (the May 10 agreement), stated that Gifford alone held a 31.25 percent interest in the property and that she and Dennis jointly and equally owned the other 31.25 percent interest. This agreement recited, however, that the loans for which Gifford had pledged her stock and signed as an accommodation maker were "for the sole benefit of . . . Dennis," that the purpose of the agreement was "to protect [the parties'] respective interests," that the "property was purchased primarily to provide an office for . . . Dennis," and that Gifford executed the notes and deeds of trust "primarily as an accommodation maker." Before the parties signed this agreement, Gifford and her lawyer again assured Dennis that the entire property would be his when Gifford's stock was returned to her and she was no longer liable on the notes.

The second "agreement" was prepared later in 1975. It provided that Gifford would convey all her right and interest in the property to Dennis on condition that the $35,000 F & M note was satisfied, Gifford's stock was returned to her, and the deed of trust noteholders released her from all liability on the notes. According to Dennis, this agreement "basically set out the agreement" that the parties reached when the property was purchased. Dennis, however, refused to sign this agreement, and it remains unexecuted. (Dennis testified that he refused to sign it "[b]ecause by this time it was pretty obvious that [Gifford's attorneys] were not representing me; because I was pretty uptight; [and] because I was pretty dissatisfied of what had been happening up to now.")

Dennis has satisfied the F & M note, and Gifford's stock has been returned to her. Moreover, the deed of trust noteholders have agreed to release Gifford "from any liability due to her participation in the execution of [the] notes and deeds of trust" in the

event a court determines that she has "no ownership interest" in the property.

Before he purchased the property, Dennis advised the Bank of Virginia that he would be paying all mortgages, expenses, and overhead. Dennis alone has made all payments on both deed of trust notes as they became due. Moreover, he has paid all real estate taxes, insurance premiums, and $9,865.64 for improvements to and maintenance of the property. He has had the exclusive use and enjoyment of the property. In fact, Dennis has leased a portion of the property and has collected the rents for his sole benefit.

On the other hand, Gifford has paid nothing toward the purchase or maintenance of the property. Although Gifford was experienced in owning and managing income-producing property, she never listed the property as a depreciable asset on any of her income tax returns. Moreover, she did not claim the property as an asset on a financial statement she prepared and submitted several months after the closing.

Gifford and Dennis never married. Their relationship gradually deteriorated until a "break up" in January 1976.

The trial court found that Gifford gratuitously signed the notes solely as an accommodation maker and merely provided collateral for the F & M loan. The trial court's opinion states that the evidence "indicates clearly . . . that [Gifford's] only expressed desire was to protect her collateral." The court noted that "Gifford made no monetary contribution to the purchase of the property . . . and at no time . . . exercised any control" over it. The court observed that "[w]hile [Dennis] was an educated man, he had had very little experience in real estate and he relied on . . . Gifford, a sophisticated business person, to arrange the purchase for him." Moreover, the court found that Dennis also relied upon Gifford's attorney to protect his interests and that the attorney made "a direct misrepresentation . . . to [Dennis] when [Dennis] questioned why . . . Gifford's name was on the deed." Finally, the trial court stated that "the evidence in the record controverts the deed" and concluded that a "resulting trust in favor of [Dennis] has been established."

 Implied or indirect trusts arise by operation of law and are usually classified as either *resulting* or *constructive* trusts. Because these trusts contravene the express language of a writing, a party seeking to establish such trusts must do so by clear and con-

vincing evidence.[1] *Leonard v. Counts*, 221 Va. 582, 589, 272 S.E.2d 190, 195 (1980); *Salyer v. Salyer*, 216 Va. 521, 525, 219 S.E.2d 889, 893 (1975); *Sutton v. Sutton*, 194 Va. 179, 185, 72 S.E.2d 275, 278 (1952). An agreement which forms the basis of an implied or indirect trust may be established by parol evidence, and accordingly, the admission of such evidence does not violate the statute of frauds. *Leonard*, 221 Va. at 587, 272 S.E.2d at 194; *Horne v. Holley*, 167 Va. 234, 240, 188 S.E. 169, 172 (1936).

A resulting trust may arise when one person pays for property, or assumes payment therefor, but has title conveyed to another with no mention of a trust in the deed. *Leonard*, 221 Va. at 588, 272 S.E.2d at 194; *Salyer*, 216 Va. at 526, 219 S.E.2d at 893. A resulting trust is based on a presumed intent or inference of law deduced from the facts and circumstances.[2] *Leonard*, 221 Va. at 588, 272 S.E.2d at 194.

> The existence of a resulting trust thus depends upon an equitable presumption of intention, based upon the natural precept that one who advances the purchase money for real property is entitled to its benefits. Therefore, after it has been shown that payment of all or a part of the purchase price for property has been paid by one person and title thereto has been placed in the name of another, the factor which will determine whether the title is to be impressed with a trust in favor of the payor is the intention of the party providing the purchase money. If no evidence of intention is available, then the presumed intention will stand; . . . .

*Kellow v. Bumgardner*, 196 Va. 247, 255, 83 S.E.2d 391, 396 (1954). Once the payor proves payment of the purchase price, the

---

[1] We have defined clear and convincing evidence as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." *Salyer v. Salyer*, 216 Va. 521, 525 n.4, 219 S.E.2d 889, 893 n.4 (1975), *quoting Walker Agcy. & Aetna Cas. Co. v. Lucas*, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (emphasis in original).

[2] Closely akin to resulting trusts are constructive trusts which the law creates, independently of the parties' intention, to prevent fraud or injustice. *Leonard*, 221 Va. at 588-89, 272 S.E.2d at 195-96; *see also Campbell v. Corpening*, 230 Va. 45, 49, 334 S.E.2d 589, 592 (1985).

burden of going forward with the evidence shifts to the grantee under the deed. *Id.*

Gifford concedes that Dennis was the primary obligor and has made all payments toward the purchase of the property. Thus, the law presumes a resulting trust in favor of Dennis, and places upon Gifford the burden of going forward with evidence sufficient to rebut the presumption.

Gifford relies upon the May 10 agreement to rebut the presumption in favor of Dennis. In support of her contention, she cites *Metro Realty* v. *Woolard*, 223 Va. 92, 286 S.E.2d 197 (1982), where we said that, in the absence of fraud, duress, or mutual mistake, a person capable of understanding a written document is bound by his signature thereon. *Id.* at 99, 286 S.E.2d at 200. *Metro Realty* is inapposite. *Metro Realty* involved an action at law for breach of a written contract. In contrast, the instant case is a chancery suit to establish an implied trust in favor of Dennis; it is neither a suit for specific performance of the May 10 agreement nor an action for damages resulting from its breach. The May 10 agreement, while probative on the issue of Dennis' intention at the time of purchase, is merely one of several circumstances which the trial court properly considered. A fair reading of the agreement supports the trial court's finding that Gifford's sole motivation was to protect herself against potential liability from Dennis' lenders, and to secure the return of her stock.

In addition to Dennis' payment of the purchase price, which created the *prima facie* presumption of his ownership, other evidence supports Dennis' claim that he is the sole owner of the property. He has paid all taxes assessed against the property and all premiums for insurance to protect the building against casualty losses. He has paid more than $9,000 for maintenance and improvements. Moreover, the sole reason for the purchase was to provide Dennis with offices for his practice, not to provide an investment for Gifford.

In contrast, Gifford's actions are inconsistent with her claim of an ownership interest in the property. Gifford and her attorney repeatedly assured Dennis that any claim that Gifford might have in the property would terminate as soon as she was released from liability on the notes and her stock held as collateral was released. Gifford merely lent her credit and collateral. The evidence shows that she was an accommodation maker on the notes. She has paid nothing toward the purchase of the property or for its upkeep. She

did not list the property as an asset on a financial statement she prepared, and she did not claim depreciation on the property on her income tax returns.

After weighing all the evidence, the trial court found a resulting trust in favor of Dennis. We agree and hold that there is clear and convincing evidence to support the court's finding. Accordingly, we will affirm the trial court's decree.

*Affirmed.*