COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Willis


PENNY LEE STANLEY

                                    MEMORANDUM OPINION*
v.    Record No. 0039-03-3               PER CURIAM
                                         JUNE 3, 2003
AMHERST COUNTY DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF AMHERST COUNTY
                      J. Michael Gamble, Judge

          (Herbert E. Taylor, III; John Randolph
          Nelson, on brief), for appellant.

          (J. Thompson Shrader; Jennifer R. Tuggle;
          J. Thompson Shrader & Associates, P.C., on
          brief), for appellee.

          (Wanda Phillips Yoder, on briefs),
          Guardian ad litem for Wilson Andrew Holley,
          Kelly Roseanne Brown and Kenny Ray Brown, Jr.

          (Patricia McAdams Gibbons, on brief),
          Guardian ad litem for Angela Marie Brown and
          Jessica Carroll Brown.


     Penny Lee Stanley (mother) appeals a decision of the trial

court terminating her parental rights to her children, Jessica

Carroll Brown, Kelly Roseanne Brown, Kenny Ray Brown, Jr.,

Angela Marie Brown, and Wilson Andrew Holley, pursuant to Code

§ 16.1-283(C)(2).  On appeal, mother contends (1) the evidence

is insufficient to support the termination of her parental

          * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

rights under that section, and (2) the trial court erred by finding the termination was in the children's best interests. We find this appeal to be without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established the Lynchburg Department of Social Services (Lynchburg DSS) received a child protective services complaint on July 12, 1999, when Wilson, then twenty-one months old, was found trying to cross a busy street unattended. A subsequent investigation revealed mother's other children, then aged twelve, ten, nine, and seven were also unsupervised at mother's residence, approximately one block from where Wilson was found.

On June 17, 1999, Lynchburg DSS had received an earlier complaint regarding the neglect of all five children and, the next day, mother signed a protection plan with Lynchburg DSS agreeing to provide proper supervision of the children.

On August 14, 1999, mother was charged with two counts of felony child neglect following another complaint of inadequate supervision of the five children. Two of the children had also been caught shoplifting at a local department store. Lynchburg

- 2 -

DSS removed the children and placed them with relatives. In September 1999, mother moved to Amherst County and the children's cases were transferred from Lynchburg to the Amherst County Department of Social Services (Amherst DSS). Mother was required to undergo psychological and drug evaluations, to attend and complete parenting and grief counseling, and to utilize offered in-home assistance services.

Due to conflicts between mother and her children's caretakers, Kenny and Kelly were placed in foster care with the Smith family in November 1999. Later that month mother was convicted of two counts of contributing to the delinquency of a minor and was jailed until February 15, 2000. From February 16, 2000 through February 29, 2000, mother had sporadic telephone visits with Kenny and Kelly. On March 11, 2000, the children had an overnight visit with mother but reported that Joe Hartless was present, a violation of the conditions imposed by the court and DSS. On March 16, 2000, a court-appointed special advocate (CASA) worker discovered Angela and Jessica home alone at mother's residence. Angela became ill the next day, and mother was instructed to remain with the child, but she left the residence after only two hours. Angela's condition worsened, and Amherst DSS was unable to contact mother.

Mother did not register for parenting classes until May 25, 2000 and only attended six out of the twelve weeks of the program. Jessica and Angela were allowed back into mother's

- 3 -

home in October 2000.  Social worker Rick Groff testified he informed mother the children would be removed from her custody if she could not provide stable housing, suitable supervision, and perform her other responsibilities.

Mother advised Groff in December 2000 that she had obtained a new job caring for an elderly woman.  However, mother repeatedly used an unapproved and inappropriate daycare provider, despite numerous warnings from Amherst DSS.  By late December, mother had fallen far behind in her house payments and was in danger of losing her residence.  The children were removed from her care, and mother continued to have supervised visits.

On November 15, 2001, mother was convicted for three felony forgery charges and three felony uttering charges stemming from events occurring between April 16, 2001 and April 27, 2001.  Mother had stolen checks from the woman she had been caring for, forged them, and used the proceeds to purchase cocaine.  She was convicted of similar charges in a different jurisdiction on May 1, 2001.  Mother tested positive for cocaine that day and was remanded to jail.  She was released from prison on September 11, 2002.

Amy French, a licensed clinical social worker, counseled Kenny, Kelly and Jessica.  She worked with the children for approximately nine months and recommended that they not be returned to mother's custody.  Gary Smith, the children's foster

- 4 -

father, testified the children were thriving in his care. Their school work had improved, and they had become involved in athletic and volunteer activities.

ANALYSIS

I.

Mother contends the order terminating her parental rights is unsupported by the clear and convincing evidence required by Code § 16.1-283(C)(2).

"Code § 16.1-283 embodies the statutory scheme for the termination of residual parental rights in this Commonwealth." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995). Subsection (C)(2) requires proof, by clear and convincing evidence, (1) that the termination is in the best interests of the child, (2) that "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) that, despite those services, the parent has failed, "without good cause," to remedy those conditions. Clear and convincing evidence is "'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 21, 348 S.E.2d 13, 16 (1986) (quoting Gifford v. Dennis, 230 Va. 193, 198 n.1, 353 S.E.2d 371, 373 n.1 (1985)).

- 5 -

Specifically, mother contends the evidence does not support the court's finding that Lynchburg DSS and Amherst DSS offered her reasonable and appropriate services to remedy the conditions which led to the placement of her children in the custody of social services.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Dep't of Social Services, 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992). "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (citation omitted).

Over a period of three years, Lynchburg DSS and Amherst DSS offered mother an array of services and advice. DSS offered parent/child nurturing classes, substance abuse evaluations, counseling, and in-home assistance services. The DSS offices provided mother with lists of approved daycare providers. They referred mother to a substance abuse treatment program, which she completed in December 2000. After mother's incarceration for the forgery charges, they again advised her to enter a substance abuse program. Groff informed mother that if she encountered any difficulties securing or accessing recommended services, she should contact Amherst DSS and it could intervene

- 6 -

with funding, transportation, or other assistance.  Groff testified that he provided mother with specific referrals over the course of two years and that he never received information from her that she had any difficulty accessing offered services. Groff instructed mother how to apply for Medicaid, food stamps, and other programs.

Clear and convincing evidence supports the trial court's conclusion that Amherst DSS provided mother with a wide array of reasonable and appropriate services.

## II.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  On appeal, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."  Id. at 329, 387 S.E.2d at 796.  Furthermore, "[w]here, as here, the trial court heard the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin, 3 Va. App. at 20, 348 S.E.2d at 16.

> In determining what is in the best
> interests of the child, a court must
> evaluate and consider many factors,
> including the age and physical and mental
> condition of the child or children; the age

- 7 -

> and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).  Mother repeatedly failed to remedy the situation which led to the foster care placement of her children.  Mother could not or would not adequately supervise and protect her children and continually left the children with no caretaker or an inappropriate one.  Mother has struggled unsuccessfully with drug addiction and spent significant time in jail and unavailable to her children.  French recommended the children not be returned to their mother as they are thriving in the stability they have found in foster care.  Smith similarly explained the children have improved during the time they have lived with his family.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  Thus far, mother has been unable to resume her parental responsibilities.  The trial court's determination that it was in the children's best

- 8 -

interests to terminate mother's residual parental rights is not plainly wrong.

Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>