COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


CAMPBELL COUNTY DEPARTMENT
  OF SOCIAL SERVICES
                                               MEMORANDUM OPINION[*] BY
v.         Record No. 0374-07-3                 JUDGE LARRY G. ELDER
                                                  DECEMBER 11, 2007
MICHAEL W. BRIZENDINE AND
  ANGELA BRIZENDINE


                FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                             J. Samuel Johnston, Jr., Judge

           David W. Shreve (Curtis L. Thornhill, Guardian *ad litem* for the
           minor children; Berger & Thornhill, on brief), for appellant.

           (James C. Reeves, III, on brief), for appellee Michael W.
           Brizendine.  Appellee Michael W. Brizendine submitting on brief.

           (Mark B. Arthur, on brief), for appellee Angela Brizendine.
           Appellee Angela Brizendine submitting on brief.


       The Campbell County Department of Social Services (DSS) appeals from a decision

denying its petitions to terminate the parental rights of Michael Brizendine and Angela

Brizendine (Mr. and Mrs. Brizendine) to three of their minor children, E., M., and J.  On appeal,

DSS contends the circuit court erroneously concluded it failed to prove by clear and convincing

evidence that termination of the Brizendines' parental rights was appropriate.  We hold that the

evidence, viewed in the light most favorable to the Brizendines, supported the circuit court's

refusal to terminate their parental rights, and we affirm.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In a proceeding to terminate parental rights, "[t]he child's best interest is the paramount concern, keeping in mind the familial bonds and the rights of both the parents and the child to maintain that bond where it can be done without substantial threat to the child's well-being." Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1993); see Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995).

On appeal of an action seeking to terminate residual parental rights, we view the evidence in the light most favorable to the party prevailing below and afford the evidence all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). We presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). We may not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it. Logan, 13 Va. App. at 128, 409 S.E.2d at 462.

Here, DSS sought the termination of parental rights under both subsections (B) and (C)(2) of Code § 16.1-283. Before a court can terminate residual parental rights under subsection (B), DSS must show, by clear and convincing evidence,

> (1) [that] termination of parental rights "is in the best interests of the child"; [and] (2) that the neglect or abuse suffered by the child presents "a serious and substantial threat to his life, health or development" and (3) that it is "not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to [his] parent . . . within a reasonable period of time."

Edwards v. County of Arlington, 5 Va. App. 294, 306, 361 S.E.2d 644, 650 (1987) (quoting Code § 16.1-283(B)).

Before a court can terminate residual parental rights under subsection (C)(2), DSS must show, by clear and convincing evidence, (1) that termination "is in the best interests of the child" and (2) that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(2).

Both subsections of the statute provide that the court "shall" consider the efforts of any "public or private social, medical, mental health or other rehabilitative agency" "to rehabilitate the parent or parents" "prior to" the placement of the child in foster care, Code § 16.1-283(B)(2), (C)(2), although only subsection (C)(2) "specifically requires a showing that DSS has provided 'reasonable and appropriate' services to a delinquent parent prior to terminating his rights," Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 269, 616 S.E.2d 765, 771 (2005).

The clear and convincing evidence required for termination is "'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance . . . .'" Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 21, 348 S.E.2d 13, 16 (1986) (quoting Gifford v. Dennis, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985)).

Here, the trial court, immediately prior to making its ruling, heard argument from DSS, the children's guardian *ad litem,* and counsel for each parent that specifically included reference to both Code § 16.1-283(B) and § 16.1-283(C)(2). It then expressly ruled that it believed the testimony of Betty Martin and, thus, that the evidence was insufficient to support termination under Code § 16.1-283(B) because it failed to prove "neglect or abuse [that] . . . presented a serious and substantial threat to [the children's] life, health or development." Applying the presumption that the trial court knew and properly applied the law absent clear evidence to the contrary, e.g. Farley, 9 Va. App. at 329, 387 S.E.2d at 796, we hold that implicit in the trial court's ruling refusing to grant the requested termination was the conclusion that the circumstances as a whole, viewed in the light most favorable to the Brizendines, also did not support termination under (C)(2). Finally, the evidence, viewed in the light most favorable to the parents, supports the trial court's conclusion that DSS failed to prove by clear and convincing evidence that termination was appropriate under either (B) or (C)(2).

The court found that the immediately precipitating cause for removal was DSS's belief that the parents and their six children were living in a trailer without doors, water or electricity whereas, in fact, the Brizendines and the children at issue were actually residing temporarily with a relative during that time. As a result, it held, the facts did not support termination under Code § 16.1-283(B) because the family's living conditions and repeated difficulties with same did not constitute "neglect . . . that presented a serious and substantial threat to [the] life, health or development" of any of the three children who were the subject of the termination petitions.

The evidence, viewed in the light most favorable to the Brizendines, supported that result. Mr. Brizendine's cousin, Betty Martin, testified that Mr. and Mrs. Brizendine and the children who were the subject of the termination petitions began to reside with her and her two daughters on April 8 or 9, 2006, when the Brizendines' power and water were turned off, and that the

Brizendine family continued to reside with her until DSS removed the children on April 14, 2006. The trial court specifically stated that it found Ms. Martin's testimony credible. The evidence also established the three children at issue continued to attend their regular schools while the family resided with Martin, and it was undisputed, as alleged in the foster care service plans prepared after the removal, that the children were healthy when they were removed.

No other evidence in the record compelled a finding that the three children at issue suffered "neglect or abuse" that "presented a serious and substantial threat" to "life, health or development." Although Mr. Brizendine had three prior founded abuse and neglect complaints and one of the complaints resulted in a foster care placement for Mr. Brizendine's stepson, the oldest child in the home, the evidence supported a finding that Mr. Brizendine had not abused any of the children other than his stepson, who had behavioral problems, and that the last of these incidents of abuse occurred in 2001, over six years prior to the removal of E., M. and J., the Brizendines' third, fourth and fifth children, on April 14, 2006. Although the second oldest child was determined to have a knot on his head in December 2002, following Mr. Brizendine's disciplining him with a paddle, no founded complaint of abuse was made, and the Brizendines received additional training on appropriate discipline and anger management as a result of that incident.

Of the three children who were the subjects of the termination petitions, only one, E., had previously been placed in foster care. That placement had been made in 2000 due to the parents' failure to follow through on a protective order and parental problems with "appropriate and adequate discipline." However, both parents completed parenting classes and received more hands-on training, as recommended based on their psychological evaluations, and the children were returned to them in late 2000.

Of the three children who were the subjects of the termination petitions, the only founded case concerning them occurred in 2003 and involved neglect, not abuse, based on a lack of supervision arising when both parents were drinking alcohol and Mr. Brizendine committed domestic assault.

In 2004, it was discovered that Tanya Cox, who had been residing with the Brizendines and helping them pay rent, had sexually abused the two oldest boys. However, the Brizendines immediately reported the abuse when they learned of it and they were not found to have been neglectful or responsible for the abuse in any way.

The evidence with regard to employment supported the trial court's finding that Mrs. Brizendine was able to maintain a steady job at a bakery for a period of two-and-one-half years, and additional evidence showed that following removal of the children, both Mr. and Mrs. Brizendine maintained employment with the same temporary agency for almost nine months, although they each worked on three different job sites during that time. Additional evidence indicated that one of the factors contributing to the parents' previous difficulties in maintaining employment had involved the two oldest boys, who were suspended from school repeatedly and, thus, frequently required additional adult supervision at home. As the trial court expressly noted, those two children "are out of the home life now." In addition, Mrs. Brizendine's youngest child, one-year-old B., had been placed in the custody of her father, Grant Shages. This evidence supported a finding that Mr. and Mrs. Brizendine were more likely to be able to maintain stable employment than they had in the past, making it more likely that they could also maintain more stable housing. Although the Brizendines had been less than forthcoming with DSS about their housing situation after the juvenile and domestic relations district court terminated their parental rights on September 22, 2006, they testified they had obtained a two-bedroom residence the rent for which included their utilities.

Finally, the evidence supported a finding that, at the time of removal, the three children at issue were healthy and were doing reasonably well in school. Jeff Dent—who provided intensive in-home services to the family based on repeated problems they had with one of their older sons and who was in the home five to ten hours per week for the two months prior to the removal—testified that "[t]here was a lot of warmth with the family in that home," "there was not an unusual amount of conflict in the home," and "the parents and the family" "had a very, very strong desire to try to make it work, to try to keep it together."

This evidence, viewed in the light most favorable to the Brizendines, supported the trial court's refusal to terminate under Code § 16.1-283(B) based on DSS's failure to prove "neglect . . . that presented a serious and substantial threat to [the] life, health or development" of any of the three children who were the subject of the termination petitions.

This same evidence supported the trial court's refusal to terminate under Code § 16.1-283(C)(2) because, viewed in the light most favorable to the Brizendines, it failed to prove that termination was in the best interest of the children and that the parents, "without good cause, ha[d] been unwilling or unable within a reasonable period of time . . . to remedy substantially the conditions which led to or required continuation of the child's foster care placement." To the contrary, the evidence, viewed in the light most favorable to the Brizendines, supported a finding that, although Mr. and Mrs. Brizendine were far from model parents, "[t]here was a lot of warmth with the family in that home," "there was not an unusual amount of conflict in the home," and "the parents and the family" "had a very, very strong desire to try to make it work, to try to keep it together." The evidence also supported a finding that they had made substantial progress toward remedying the conditions that led to the foster care placement by demonstrating an ability (1) to satisfactorily parent the three children at issue; (2) to adequately maintain employment when not required to care for their two oldest children, who had

- 7 -

significant discipline problems, or Mrs. Brizendine's one-year-old daughter, all three of whom had been removed from their home and placed elsewhere; and (3) to obtain habitable housing and necessary utilities for themselves and the three children at issue.

For these reasons, we hold that the evidence, viewed in the light most favorable to the Brizendines, supported the circuit court's refusal to terminate their parental rights to the three children at issue, and we affirm.

<u>Affirmed.</u>