UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia


LUBNA AIJAZ

v.       Record No. 2247-14-4

FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
SEPTEMBER 29, 2015


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Lorraine Nordlund, Judge

Mark H. Bodner for appellant.

May Shallal Kheder, Assistant County Attorney; Seema D.
Ruchandani, Guardian *ad litem* for the minor child (David P.
Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy County
Attorney, on brief), for appellee.


Lubna Aijaz ("mother") appeals an order of the Circuit Court of Fairfax County (the

"circuit court") terminating her parental rights to her child, Syed Mohib Ali ("Syed") pursuant to

Code § 16.1-283(C)(2).  Specifically, mother argues that the circuit court erred by (1) shifting the

burden of proof to mother to show that she, "without good cause, was unwilling or unable within

a reasonable period of time to remedy substantially the conditions that led to or required

continuation of her child's placement in foster care, notwithstanding the reasonable and

appropriate efforts of social, medical, mental health, and other rehabilitative agencies," and

(2) concluding that mother, within a reasonable time, was unwilling or unable to remedy the

situation that led to the child being placed and remaining in foster care and that it was in the

child's best interests to terminate her parental rights.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ANALYSIS

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). On appellate review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). "On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Tackett v. Arlington Cnty. Dep't of Human Servs., 62 Va. App. 296, 303, 746 S.E.2d 509, 512 (2013). Where the circuit court's judgment is based on evidence heard *ore tenus*, its decision to terminate a parent's rights is entitled to great weight and "'will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Code § 16.1-283(C)(2) provides:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> \*     \*     \*     \*     \*     \*     \*

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which

led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

### A. Shifting the Burden of Proof

Mother's first assignment of error claims the circuit court erred by shifting the burden of proof to her to show that "she, without good cause, was unwilling or unable within a reasonable period of time to remedy substantially the conditions that led to or required continuation of her child's placement in foster care, notwithstanding the reasonable and appropriate efforts of social, medical, mental health and other rehabilitative agencies." Specifically, mother claims that the circuit court shifted the burden of proof by requesting mother provide certain documents including: the death certificate for the child's father, documentation for mother's initial entry into the United States, asylum documents for the child, proof of employment, and a copy of mother's residential lease with proof of a source of funds to pay the lease.

The circuit court did inquire from all counsel whether the burden of proof shifted to mother after DFS had established a prima facie case under Code § 16.1-283(C)(2) by showing by clear and convincing evidence that mother had failed to substantially remedy the conditions that led to foster care of the child. However, when delivering its decision on November 18, 2014, the circuit court specifically "discarded the notion that there was a shift in the burden because the statute did not specifically state that," and "looked at it as if the burden remained with the Department for the entire period rather than any shifting of the burden since the legislature was not clear as to the [e]ffect on the [c]ourt's analysis." Further, the circuit court made it clear that the documents that were requested from mother were "to establish her credibility," and not to

shift the burden of proof to mother. At oral argument, mother argued that the circuit court shifted the burden despite its statements to the contrary because DFS failed to show any harm to the child caused by the mother. Given the circuit court's statement to the contrary, mother's argument is essentially that the burden of proof must have been shifted because, without a shift in the burden of proof, the evidence was insufficient to allow the circuit court to reach its conclusion. As will be discussed in detail below, DFS presented clear and convincing evidence that Syed was harmed by mother's irrational behavior and her failure to address the issues that led to Syed's removal. Accordingly, we find that, consistent with the circuit court's statement, the burden of proof remained with DFS, and, as discussed below, DFS produced evidence sufficient to carry that burden.

### B. Termination of Mother's Parental Rights

Mother's second assignment of error asserts that the circuit court erred in concluding there was clear and convincing evidence to terminate her parental rights pursuant to Code § 16.1-283(C)(2). Mother contends that she substantially remedied the conditions which led to the child's placement in foster care given that she is employed, leases a basement apartment, attends counseling, and has a loving relationship with her child.

Before residual parental rights can be terminated pursuant to Code § 16.1-283(C)(2), "a trial judge must make two separate inquiries." Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 579, 625 S.E.2d 670, 673 (2006). The circuit court must find, "based on clear and convincing evidence," that (1) "[termination] is in the best interests of the child" and (2) DFS met its burden of proving the requirements of subsection (C)(2). Code § 16.1-283(C); see Crawley, 5 Va. App. at 578-79, 625 S.E.2d at 673. The clear and convincing evidence required for termination is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established . . . [i]t does not

- 4 -

mean clear and unequivocal." Gifford v. Dennis, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985).

First, the circuit court did not err in determining that terminating mother's parental rights was in Syed's best interest. In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child, the age and physical and mental condition of the parent, the relationship existing between the parent and child, the needs of the child, and the role the parent has played, and will play in the future, in the upbringing and care of the child. Barkey v. Commonwealth, Alexandria Dep't of Human Servs., Div. of Soc. Servs., 2 Va. App. 662, 668-69, 347 S.E.2d 188, 191 (1986).

Syed was eight years old and had been in foster care for thirty months at the time of the termination of mother's parental rights. The testimony at trial of Syed's foster care worker and therapist established that Syed, who had initially displayed anxiety and adjustment issues when he was first removed from mother, was now thriving in foster care. His foster parents had a similar religious and cultural background to Syed and had fully accepted him into their family. Syed's therapist explained that Syed had integrated into his foster family and was benefitting greatly from a stable home. Syed had even started to express interest in going to college when he was older. Notably, mother only visited with Syed on seven occasions during the first two years he was in foster care.

Prior to Syed's removal, mother had impulsively moved from place to place, with no plan for securing housing or employment. When the DFS worker initially met with mother on May 18, 2012, mother had arrived in Virginia after traveling from Florida to Houston, Texas, to Baltimore, Maryland in a matter of days. At six years old, Syed was not registered for school. Mother also displayed alarming behavior in Syed's presence including telling Syed that people were "after" her, including the social worker who she claimed had set up surveillance cameras

inside the Chuck E. Cheese to watch her during a supervised visit. On another occasion, mother began whispering to Syed and became verbally aggressive when the social worker asked mother to speak up and ultimately had to be escorted out of the building by police. Mother called the foster home between 2:00 a.m. and 3:00 a.m., used curse words while speaking with the child, and spoke negatively about the foster family. Aaron Hopper ("Mr. Hopper"), the home-based worker who supervised phone calls and visits between mother and Syed, testified that although the supervised visits were generally appropriate in nature, unsupervised visits would not be appropriate.

The circuit court also noted concern about mother's demeanor on the witness stand at trial, explaining "she was just sitting there grinding her teeth throughout . . . . Her eyes were wide open, her pupils were large. She was looking all over the place. I was very concerned by her disturbed affect." Accordingly, this Court finds there is evidence in the record to support the circuit court's conclusion that Syed's best interest is served by terminating mother's parental rights and allowing him to continue to thrive in the stable and nurturing environment of his foster home.

Code § 16.1-283(C)'s "second prong relates to the . . . remedying of the conditions that led to foster care." Crawley, 47 Va. App. at 579, 625 S.E.2d at 673. If the circuit court finds that termination is in the best interest of the child, the circuit court may only terminate parental rights if it also finds clear and convincing evidence that DFS "offered 'reasonable and appropriate' services to [the parent] to help [the parent] substantially remedy the conditions which led to or required continuation of [the child's] foster care placement" and despite those services, the parent failed "'without good cause' to remedy those conditions 'within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care.'"

- 6 -

Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 581 (2004) (quoting Code § 16.1-283(C)(2)).

In this case, there is clear and convincing evidence that mother was unable or unwilling to remedy the conditions that led to Syed's removal during the thirty months he remained in foster care. First, mother was unwilling or unable to secure stable housing, as directed by the court beginning with the preliminary removal order of May 25, 2012. Immediately after Syed's removal, mother testified that she went to New York for a few days, came back to Virginia and stayed in a hotel for a few days, then moved to Alexandria, Virginia for three months, then to Florida for three to four months, then back to Virginia to reside in Woodbridge. However, the only evidence of housing presented to the circuit court was an apartment lease that had been signed just days before the hearing.

Additionally, over the thirty-month period, mother continued to reject the services DFS had offered to assist her in addressing her mental health issues. Particularly, mother refused to complete a psychological evaluation, she thwarted any attempts to contact relatives for potential placement, and continued to display irrational behavior. Mother's first appointment with psychologist Dr. William Ling ("Dr. Ling") was scheduled for August 16, 2013. Mother arrived three hours late and refused to complete any part of the evaluation. A second psychological evaluation was scheduled for September 19, 2013, but ultimately did not take place until November 2013.

Once he was able to conduct the evaluation, Dr. Ling diagnosed mother with anxiety disorder and a "rule-out" for psychotic disorder. Dr. Ling reported that mother demonstrated a level of mistrust and suspicion based upon "inappropriate idiosyncratic or exaggerated beliefs" and had "consistent difficulty in accurately ingesting and prioritizing information with no comprehensive understanding of information and events." Dr. Ling opined that people who

exhibit similar paranoid behaviors are likely to discontinue their medication and recommended treatment, particularly if they believe their beliefs are rational.

Dr. James Steg ("Dr. Steg") conducted a psychiatric evaluation of mother in April 2014, nearly two years after mother was ordered by the court to participate in such evaluation. Dr. Steg reported that mother was "vague and evasive" at times and ultimately diagnosed her with anxiety disorder and paranoid personality disorder. When asked about the prognosis, Dr. Steg indicated that "this is a lifetime illness . . . anti-psychotic medication can be helpful, but studies have not shown it to be the magic solution." Dr. Steg testified that ongoing therapy might be helpful, but that it is difficult to manage because of the trouble people with these disorders have in forming trusting alliances.

Further evidence suggested that mother had not been consistent in taking the medication prescribed by Dr. Steg and had no plans to continue counseling. Mother testified, "I'm the same person. I'm functioning just like that. I don't know why [the CPS worker] misunderstood, I don't know." At no point during the thirty months that Syed was in foster care did mother ever acknowledge that she had any issues that led to his removal. Instead, she continued to blame various employees of DFS for Syed's placement in foster care and the proceedings to terminate her parental rights.

The circuit court did not err in concluding that Syed was not served by continuing to wait to see if mother would ever follow the court's orders or address her mental health issues. See Kaywood v. Halifax Cnty. Dep't of Social Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) (holding "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities"). Given that mother had made no appreciable progress in establishing a stable

home or addressing her mental health issues, we hold that the circuit court properly found that mother had not substantially remedied the conditions that led to Syed's removal.

The record clearly supports the circuit court's determination that (1) termination was in the child's best interests, and (2) that mother had been either unwilling or unable to remedy those conditions which led to the child's placement in foster care within thirty months, a full eighteen months longer than the statute's timing condition, notwithstanding the continued efforts of DFS. Accordingly, we find the requirements of Code § 16.1-283(C) indispensable to termination of a mother's parental rights were satisfied and therefore affirm the circuit court's judgment.

<u>Affirmed.</u>