UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges O'Brien, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


CLARISSA GREGORY

v.        Record No. 0657-16-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE ROBERT P. FRANK
APRIL 11, 2017


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Charles E. Haden for appellant.

Kimberly Karle, Assistant City Attorney (Vanessa T. Valldejuli, City
Attorney; Therese M. Price, Assistant City Attorney; Gregory C.
Bane, Guardian *ad litem* for the minor children, on brief), for
appellee.


Clarissa Gregory ("mother") appeals the termination of her residual parental rights to her

children, G.H. and C.G., pursuant to Code § 16.1-283(C)(2).  She contends the evidence was

insufficient to support the trial court's decision to terminate her parental rights because it failed

to show that termination was in the children's best interests and that the Hampton Department of

Social Services ("HDSS") made "reasonable and appropriate efforts" to assist her in remedying

substantially the conditions which led to or required continuation of the children's foster care

placement.  She also maintains the trial court erred in approving adoption as the goal of the foster

care service plan.  Finding no error, we affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

In March 2014, mother sought assistance from HDSS because her children's father was allegedly physically and sexually abusing her in front of the children. Mother stated she was afraid that the children's father was going to kill her. At the time mother sought aid from HDSS, C.G. was approximately eighteen months old, and G.H. was almost three months old. Mother had substance abuse issues and suffered from a mental disability. She also had no housing.

HDSS expedited transitional housing for mother and the children and referred mother to several services. However, mother repeatedly left the transitional housing with the children without notifying HDSS of her whereabouts, and she also violated the safety plan. Due to concerns about mother's mental health and her "persistent" violations of the safety plan, HDSS offered respite care to the children. When mother refused, HDSS obtained an emergency removal order and took custody of the children on April 1, 2014. Both children were placed in foster homes.

The initial goal of the foster care service plan was to return the children home.

When C.G. and G.H. entered HDSS's custody, they displayed significant developmental delays. Both children were assessed and diagnosed with long-term disabilities. The foster parents secured appointments with specialists to address these developmental delays. The foster parents were nurturing, and the children thrived in their home.

To achieve mother's reunification with the children, HDSS recommended that mother secure stable independent housing and financial security for at least six months, engage in no

illegal activity and accrue no further criminal charges, complete parenting education classes, comply with medication management through the Community Services Board, undergo individual therapy, complete substance abuse assessment and treatment, and participate in supervised visitation.

A year after the children were removed, mother had failed to secure stable housing and employment. Her drug screenings were positive. Although mother completed two parenting classes, she was never able to move beyond supervised visitation because she was unable to secure stable housing and was inconsistent with her medications.

On March 2, 2015, mother was discharged from Partners In Recovery after testing positive for alcohol. She continued to drink and use marijuana.[1] Mother was charged with possession of marijuana in May 2014 and May 2015. On June 12, 2015, HDSS petitioned to change the goal from return home to adoption. The foster parents of both children expressed their willingness to adopt them. In June 2015, HDSS also petitioned the juvenile and domestic relations district court ("J&D court") to terminate mother's parental rights. The J&D court granted the petition on July 21, 2015, and terminated mother's parental rights pursuant to Code § 16.1-283(C)(2). Mother appealed to circuit court.

The circuit court heard the appeal on March 21, 2016. The evidence showed that mother was never able to obtain stable housing or employment and was inconsistent with her medications management. Indeed, mother testified that she had recently stopped taking her mental health medications as prescribed without first consulting with her mental health provider. While she had participated in substance abuse treatment, she continued to struggle with her sobriety. Mother had incurred several illegal substance-related criminal charges while her

---

[1] Social worker Shirley Bowie testified that mother reported she had smoked marijuana as recently as the week prior to the circuit court termination hearing.

children were in foster care: a possession of marijuana charge on May 15, 2014; an open alcohol container charge on May 23, 2014; and a possession of marijuana charge on May 26, 2015. Mother did complete some parenting classes and participate in supervised visitation with the children; however, HDSS's witnesses agreed that she could never progress to unsupervised visitation due to child safety concerns.

By February of 2016, mother had resumed living with the children's father. Initially, mother indicated that she and the father intended to care for the children in the father's home. By the following month, however, mother called social worker Shirley Bowie and left a message that she had moved out of father's home and that "she had concerns [about] the children coming to stay with him due to his substance abuse." Mother testified that she told Bowie that "there were drugs in the house [and that] [i]t wasn't for him. It was for myself as well. I was engaging in drugs. [The father] was engaging in drugs." Mother agreed that it was "best for the kids not to be in a drug environment."

When asked at the hearing to outline her plan for the children to live with her, mother answered:

> From my understanding, the kids will not be returned to me. As
> far as the parent, I do agree with [the father] getting the kids, like I
> told Ms. Bowie, if there's some type of drug treatment lined up.
> That would be a great fit. My intention was for him to get the kids.
> He has a two bedroom apartment and works a job.

Mother acknowledged that she was not in a position to take the children due to her housing situation. She stated that, if they lived with their father, she would maintain visitation and her relationship with them.

- 4 -

On March 21, 2016, the circuit court terminated the parental rights of mother and father[2] and approved the new goal of adoption.

This appeal followed.

ANALYSIS

On appeal, mother contends that the trial court erred by terminating her parental rights because HDSS failed to present clear and convincing evidence that termination was in the children's best interests or that HDSS made "reasonable and appropriate efforts" to assist her in remedying the conditions that led to the children's placement in foster care. For the same reasons, she also contends the trial court erred by approving the foster care plan goal of adoption. With regard to the approval of the adoption plan, however, mother maintains that HDSS failed to meet its evidentiary burden by a preponderance of the evidence.[3]

When reviewing a decision to terminate parental rights, we presume the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on

---

[2] Father did not appeal the termination of his residual parental rights to this Court.

[3] Mother also argues that she was deprived of due process because HDSS sought termination of her parental rights pursuant to Code § 16.1-283(B), but the trial court's termination decision was based upon Code § 16.1-283(C)(2). However, mother's assignment of error attacking the trial court's termination decision is limited solely to the sufficiency of the evidence. Nowhere in either assignment of error does mother assert that she was deprived of due process. Because her due process argument lies beyond the scope of the assignments of error, we decline to consider this argument. See Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 345 (2007) (because an appellant did not include an argument in his questions presented (now assignments of error), the Court would not address it on appeal). See also Rule 5A:20(e). Furthermore, because mother did not raise her due process argument below, she has failed to preserve this argument for appeal. Rule 5A:18. Mother does not request consideration of this argument pursuant to the ends of justice exception, and we decline to apply the exception *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Pursuant to Code § 16.1-283(C)(2),

> [t]he residual parental rights of a parent or parents of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> . . . .
>
> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

At the termination hearing, mother argued only that she had done "her best" and conceded she did not expect to have the children returned to her due to her lack of appropriate housing. Instead, she asked that the trial court return the children to their father based upon her belief that he could "get the drug situation under control." Mother's sole objection to the court's orders terminating her parental rights states only "Seen and objected to for the reasons stated on the

record." Likewise, that is the sole objection made by mother to the trial court's order changing the foster care goal to adoption.

Mother made no assertion at the termination hearing that HDSS failed to offer reasonable and appropriate services, nor did she contest the approval of the foster care plan. Thus, she failed to preserve these arguments for appeal. Rule 5A:18. Mother's general objection to the trial court's final order was insufficient to preserve them. Rule 5A:18 requires that "a specific argument must be made to the trial court at the appropriate time . . . . A general argument or an abstract reference to the law is not sufficient to preserve an issue." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citation omitted). "[N]either [Code § 8.01-384] nor Rule 5A:18 is complied with merely by objecting generally to an order." Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*). A trial court must be alerted to the precise issue to which a party objects. See Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 525 (1992). Mother does not ask that we consider her argument to attain the ends of justice, and we decline to apply that exception to Rule 5A:18 *sua sponte*. Edwards, 41 Va. App. at 761, 589 S.E.2d at 448. Therefore, we will not consider her arguments on appeal.[4]

Of the several issues raised in mother's assignment of error, the only one preserved is whether the trial court erred in finding by clear and convincing evidence termination was in the best interests of the children.

---

[4] In her brief, mother referred to a number of pages in the transcript, pursuant to Rule 5A:20(c), where she claims each assignment of error was preserved. However, a review of those pages reveals that mother never argued HDSS failed to offer reasonable and appropriate services nor did she challenge the foster care plan.

HDSS must prove, by clear and convincing evidence[5] that it was in the children's best interest for the parent's residual parental rights to be terminated. Code § 16.1-283(C)(2).

We conclude the trial court's decision that termination was in the children's best interests was neither plainly wrong nor without evidence to support it. See Toms, 46 Va. App. at 266, 616 S.E.2d at 769. Mother, who argued against termination on the basis that the children should be placed with their father, initially sought assistance from HDSS based upon allegations that father was physically and sexually abusive toward her. Father also abused drugs and refused to participate in a drug treatment program until 2015. Despite seeking treatment in March 2015, he was unable to maintain his sobriety and tested positive for marijuana shortly before the termination hearing.

On March 16, 2016, less than a week before the termination hearing, mother called HDSS expressing concern about the children being with their father because of his continued drug abuse. Yet, only the month before, in February 2016, mother was residing with father and still "engaging in" drug use with him, despite mother having attended various drug counseling and treatment programs. At the termination hearing, mother, who had a long history of drug abuse, agreed it was "best" for the kids not to be in a drug environment. Mother also acknowledged that her housing situation precluded her from taking custody of the children.

---

[5] Clear and convincing evidence is

> that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.

Gifford v. Dennis, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985) (quoting Walker Agcy. & Aetna Cas. Co. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975)).

While she expressed a desire to see the children placed with their father rather than in foster care, that view was conditioned upon father's ability to cease his drug abuse.

Legal custody was awarded to HDSS on April 1, 2014. At the time of the termination hearing, the children had been in foster care for nearly two years. The children suffered from developmental delays and required frequent counseling and care. Both children improved and thrived in the care of the foster parents, with whom they lived the majority of their lives.

Since the children were placed in the custody of HDSS, a period of nearly two years, mother never achieved stable housing nor did she resolve her drug problem, despite participating in substance abuse programs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We conclude the trial court did not err in terminating mother's parental rights.

Affirmed.