COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Retired Judge Bumgardner*

UNPUBLISHED

ASHLEY ROSS

                                           MEMORANDUM OPINION**

v.       Record No. 0611-18-4                            PER CURIAM
                                             JANUARY 8, 2019

FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

(Mark H. Bodner, on briefs), for appellant.

(Elizabeth D. Teare; May Shallal; Jessica C. Miller, Guardian *ad litem* for the minor child; Office of the County Attorney, on brief), for appellee.

Ashley Ross (mother) appeals the orders terminating her parental rights and approving the foster care goal of adoption. Mother argues that the circuit court erred in "concluding that clear and convincing evidence supported the Fairfax County Department of Family Services' [the Department] petition to terminate [mother's] residual parental rights" because the evidence was insufficient to support a termination of parental rights under Code § 16.1-283(C)(2). Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

\* Retired Judge Bumgardner took part in the consideration of this case by designation pursuant to Code § 17.1-400(D).

\*\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" <u>Farrell v. Warren Cty. Dep't of Soc. Servs.</u>, 59 Va. App. 375, 386 (2012) (quoting <u>Jenkins v. Winchester Dep't of Soc. Servs.</u>, 12 Va. App. 1178, 1180 (1991)).

Mother and Michael Johnson (father) are the biological parents to the minor child, D.R. From the time that D.R. was two weeks old until she was three years old, Iris Boxley-Lewis, a family friend, helped to take care of D.R. Mother did not have a place to live, so D.R. lived with Boxley-Lewis. Mother visited with D.R. at various times, and the longest period of time that she went without seeing D.R. was a month. Once mother had housing, D.R. started living with mother.

In January 2015, when mother picked up D.R. from school, mother's eyes were red, and she subsequently tested positive for PCP. The Fairfax County Juvenile and Domestic Relations District Court (the JDR court) removed D.R. from mother's care and ordered that D.R. live with Darlene Ross (the maternal grandmother).

In April 2016, D.R. was ten years old and lived in a home with the maternal grandmother, as well as the maternal grandmother's minor son, three of her adult daughters, and five of her grandchildren. On April 12, 2016, the Department received a referral for possible physical neglect of one of the minor children in the maternal grandmother's home. The Department also received allegations that mother and one of her siblings were abusing drugs. As a result, the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." <u>Levick v. MacDougall</u>, 294 Va. 283, 288 n.1 (2017).

Department sought a preliminary protective order for D.R., which the JDR court granted *ex parte* on April 19, 2016. At the next JDR court hearing on April 25, 2016, the maternal grandmother informed the court that she was unable to care for several of her grandchildren, including D.R. The JDR court entered an emergency removal order, and the Department placed D.R. in foster care.

On April 28, 2016, the JDR court entered a preliminary removal order and directed mother to participate in a psychological evaluation, an Alcohol and Drug Services (ADS) assessment, and a parent-child assessment, and to follow through with any recommendations. The JDR court also ordered mother to complete parenting classes.

On May 17, 2016, the parties agreed that the facts were sufficient to support a finding that D.R. was at risk of being abused or neglected. In the foster care plan dated May 27, 2016, the Department explained that for D.R. to be placed in mother's care, mother "will need to prove that she is sober throughout the case, as evidenced by random drug testing and commit to a drug free life in order to raise her children." The JDR court subsequently entered a dispositional order and reiterated that mother was ordered to participate in a psychological evaluation, an Alcohol and Drug Services (ADS) assessment, and a parent-child assessment, and to follow through with any recommendations. The JDR court also ordered mother to complete parenting classes and submit to a drug test within twenty-four hours of a request by the Department.

Mother completed the parenting classes, the parent-child assessment, and the psychological evaluation. Dr. William Ling completed a parent-child assessment with mother and D.R. in 2016. Dr. Ling found that mother and D.R.'s interaction with one another was "reasonably appropriate." However, mother did not report having any psychiatric, alcohol, or substance abuse issues.

The psychological evaluator recommended that mother complete the ADS treatment, which included intensive outpatient services involving substance abuse group therapy for three hour sessions, three times per week for sixteen weeks. Mother previously had been referred to intensive outpatient services at ADS, but she never completed them. On October 13, 2016, mother was removed from the ADS Intensive Outpatient Treatment because she did not regularly attend the program and tested positive for alcohol twice.[2] Mother could have returned to the program after ninety days, or in February 2017, but she never did. The Department offered mother transportation on multiple occasions and offered to make an appointment for an assessment and accompany her to the appointment, but mother refused all assistance. She told the social worker that she "was tired of dealing with ADS." Mother never complied with the ADS recommendations.

In addition to offering mother substance abuse treatment services, the Department offered visitation and weekly phone calls to D.R., mother, and mother's family. As the case progressed, the Department increased mother's visitation from once a week to twice a week, and the JDR court allowed D.R. to visit the maternal grandmother at her home. The Department noticed, however, that as the visitations increased, D.R.'s "mental health and ability to regulate her emotions decreased." Mother criticized D.R., even after the Department told mother to stop making critical comments to D.R. Mother told the Department that D.R. was her daughter and she would say what she wanted to her. D.R.'s anxiety increased before the visits. Mother also began arriving late for many of the visits, and sometimes she did not appear for a scheduled visit. The Department adjusted the time of the visits to accommodate mother's work schedule, but mother continued to arrive late or did not appear. D.R. was "distraught" and "very sad" when mother was late or did not appear for the visits. After D.R. started visiting the maternal

---

[2] On "several" tests between 2015 and 2016, mother also tested positive for PCP.

grandmother's home, D.R. reported that mother hit her. The Department put a safety plan in place that prevented mother from being in the home during the visits. On May 27, 2017, D.R. had her last visit with her brother and her cousins because the maternal grandmother cancelled a scheduled visit in June 2017.

On the morning of a scheduled visit with mother on July 19, 2017, D.R. was "agitated and silent." While riding in the car with her foster mother, D.R. opened her car door. The foster mother immediately stopped the car. D.R. exited and ran across the road, without looking for traffic. Later that day, D.R. was hospitalized for mental health reasons and remained hospitalized for eight days. D.R. was prescribed medication and attended therapy.

The Department suspended visitations at the request of D.R. and her therapeutic team. D.R. expressed "frustration, disappointment, sadness, and anger regarding her family's inconsistency and her continued placement in foster care." D.R. spoke with the maternal grandmother by telephone on July 25, 2017, and thereafter, D.R. never requested to visit or call her family again.

In August 2017, the Department filed a petition to terminate mother's parental rights to D.R. On November 17, 2017, the JDR court entered orders terminating mother's parental rights and approving the foster care goal of adoption. Mother appealed to the circuit court.[3]

On March 12 and 13, 2018, the parties appeared before the circuit court.[4] The Department presented evidence that in 2017, Dr. Ling conducted a psychological evaluation of

_____

[3] The JDR court also terminated father's parental rights, and he appealed to the circuit court.

[4] On September 14, 2018, mother and father filed a "Motion to file duplicate original transcript or in the alternative file transcript out of time." The circuit court heard evidence and argument on March 12 and 13, 2018. The transcript for the March 12, 2018 hearing was timely filed and forwarded to this Court. See Rule 5A:8. Mother and father provided evidence that the court reporter timely delivered, to the circuit court, the transcript for the March 13, 2018 hearing; however, the transcript was not part of the record sent to this Court. A duplicate transcript of the

- 5 -

D.R. and diagnosed her with Disinhibited Social Engagement Disorder, which is a subcategory of Reactive Attachment Disorder, with a secondary diagnosis of Disruptive Mood Disorder. Dr. Ling explained that children diagnosed with Reactive Attachment Disorders usually have been exposed to an "extended period of abuse or neglect." Dr. Ling also diagnosed D.R. with attention deficit hyperactivity disorder and a learning disorder in reading comprehension and spelling. Then, in 2018, Dr. Ling conducted a neuropsychological evaluation of D.R. Although he noticed that D.R. had improved in her functioning, she continued to demonstrate patterns of inattentiveness and distractibility and still had problems with impulse regulation. Dr. Ling opined that D.R.'s prognosis was "pretty good" as long as she has "ongoing stability and consistency and appropriateness within the relationships between herself and those who are providing care for her."

The Department presented additional evidence concerning D.R.'s development and her progress in foster care. D.R. had been "struggling" and emotionally unstable while she had visitations with mother; however, her mental health improved after her hospitalization and the suspension of the visitations. According to her social worker, D.R. was "doing really well" and "thriving" in her current foster care placement, which was a potential adoptive placement. D.R.'s therapist, Amy Anderson, testified that in October 2016, D.R. initially presented as "very angry . . . and demanding," but over time, she had "matured" and become "calmer." D.R.'s foster father testified that she had improved her reading and was expected to be reading on grade level by the end of the school year. He also stated that her behavioral issues had improved.

At the conclusion of the Department's evidence, mother moved to strike, which the circuit court denied. Mother testified that she had lived at the same two-bedroom apartment

March 13, 2018 hearing was filed on September 18, 2018. This Court grants mother and father's motion and accepts the transcript for the March 13, 2018 hearing as timely filed and, thus, part of the record on appeal. Rule 5A:8.

since D.R. was removed from the maternal grandmother's house and had worked for the same employer since 2014. She also explained that in August 2017, she attended a substance abuse treatment program for approximately a month. Mother acknowledged that the program was not one to which she had been referred by the Department.

At the conclusion of all of the evidence, mother renewed her motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) and approved the foster care goal of adoption.[5] This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in terminating her parental rights because the Department did not prove, by clear and convincing evidence, that she failed to remedy the conditions that led to and continued D.R.'s placement in foster care. Mother asserts that she completed most of the Department's requirements, including the parenting classes, the psychological evaluation, and the parent-child assessment, but admittedly did not complete the

---

[5] The circuit court also terminated father's parental rights, and he appealed the circuit court's rulings. See Johnson v. Fairfax Cty. Dep't of Family Servs., Record No. 0628-18-4.

ADS treatment programs. She contends that her failure to complete the substance abuse treatment should not be the basis to terminate her parental rights.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005). "Code § 16.1-283(C)(2)'s twelve-month time limit 'was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement.'" Dung Thi Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 171 (2014) (quoting L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56 (2003)).

"It is critical to understand that regardless of what subsection of Code § 16.1-283 the Department proceeds under, it must prove each of its allegations by clear and convincing evidence before the . . . court may terminate a parent's parental rights to his or her child." Farrell, 59 Va. App. at 347. "We have defined clear and convincing evidence as 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" C. S. v. Va. Beach Dep't of Soc. Servs., 41 Va. App. 557, 565-66 (2003) (quoting Gifford v. Dennis, 230 Va. 193, 198 n.1 (1985)). "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is

required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Id. at 566 (quoting Gifford, 230 Va. at 198 n.1).

After hearing all of the evidence and arguments, the circuit court found that "the [D]epartment has satisfied, by clear and convincing evidence, all of the elements of (C)(2), as it relates to the mother in this case." Contrary to mother's arguments, the circuit court recognized that mother had "taken some steps" toward meeting the Department's requirements. However, the circuit court also found that mother "clearly did not substantially comply with the conditions which lead [sic] to or required continued child foster care placement." The circuit court found that mother had a history of alcohol and substance abuse and that "this is so much more than a positive alcohol test and is so much more than having some assessment already done." The circuit court stressed that mother struggled with "the demon of alcohol and/or substance abuse." The Department presented evidence that in 2015, it had removed D.R. from mother's care because mother was using PCP. At the time of the circuit court hearing, mother still had not addressed her substance abuse issues and did not comprehend how her actions affected D.R. Despite reasonable changes made to the visitation schedule to accommodate mother's work schedule, mother "fail[ed] to appreciate the impact" on D.R., including D.R.'s hospitalization, when mother was late or missed visitations.

In addition, the Department presented evidence concerning D.R. and her mental health. The parties stipulated that Dr. Ling was an expert in clinical psychology. After hearing Dr. Ling's testimony, the circuit court found credible his diagnosis that D.R. suffered from Reactive Attachment Disorder and Disinhibited Social Engagement Disorder, resulting "from years of abuse as opposed to some episodic incident that occurred."[6] Therefore, D.R. required a

---

[6] "This Court is bound by the credibility findings of the circuit court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 339 (2013).

home with stability and consistency, which she has with her current foster care home. The circuit court found that D.R. was "thriving now" and "doing well."

At the time of the circuit court hearing, D.R. had been in foster care for approximately twenty-three months. Despite the Department's efforts during that extended period, mother had failed to remedy her substance abuse issues, and her relationship with D.R. had caused the child significant mental anguish. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the totality of the circumstances, the circuit court did not err in finding that there was clear and convincing evidence to support the termination of mother's parental rights under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.