COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Ortiz and Senior Judge Clements


DEBORAH SWARRAY

MEMORANDUM OPINION*

v.      Record No. 0630-22-4                                PER CURIAM
                                                            JUNE 27, 2023

ALEXANDRIA DEPARTMENT OF COMMUNITY AND
  HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Adam D. Elfenbein; Elfenbein Law PLLC, on briefs), for appellant.

(Joanna C. Anderson; Jill A. Schaub; Matthew W. Greene, Special
Assistant City Attorney; Luis E. Chinchilla, Guardian ad litem for
the minor children; Greene Law Group PLLC, on brief), for
appellee.


Deborah Swarray (mother) appeals the circuit court's orders terminating her parental

rights to her two minor children under Code § 16.1-283(C)(2) and approving the foster care goal

of adoption. Mother argues that the circuit court erred by finding that the Alexandria

Department of Community and Human Services (the Department) proved by "clear and

convincing evidence that [she] failed to substantially remedy the conditions which led to or

required the continuation of the children's foster care placement." She also asserts that the

circuit court erred in finding that termination of her parental rights was in the best interests of the

children. After examining the briefs and record in this case, the panel unanimously holds that

oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). We find no error and affirm the circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party.

Mother and Russell Clinton Smith, Jr. (father) are the biological parents to R.S. and S.S., the two children who are the subject of this appeal.[2] In January 2020, the Department received a report that mother gave birth to R.S., who was born substance exposed; both he and mother tested positive for cocaine.[3] Mother agreed to enter a 30-day inpatient treatment program. The Department entered into a safety plan with father, who agreed to care for R.S. when he was released from the hospital. The safety plan specified that mother could not have unsupervised contact with R.S.

In early March 2020, after her release from inpatient treatment, mother agreed to submit to a drug screen; she tested positive for cocaine. The Department also learned that the parents had violated the safety plan when father went to the grocery store and left R.S. alone with mother. On March 9, 2020, the City of Alexandria Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and placed R.S. in the Department's

---

[1] The record in this case was sealed. Nevertheless, the appeal requires unsealing relevant portions of the record to resolve the issues mother has raised. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Father also appealed the circuit court's orders terminating his parental rights to R.S. and S.S. and approving the foster care goal of adoption. *See Smith v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 0894-22-4 (Va. Ct. App. Jun. 27, 2023).

[3] During its investigation, the Department learned that mother had an older child; Fairfax County had removed the child from her care because of her substance abuse, and her parental rights to that child were voluntarily terminated in 2014.

- 2 -

custody. After entering a preliminary removal order, the JDR court adjudicated R.S. to be abused or neglected and entered a dispositional order, which father appealed.

The circuit court also found that R.S. was abused or neglected but ordered that he be returned to father's custody with a protective order, prohibiting mother from having unsupervised contact with R.S. On September 9, 2020, the Department returned R.S. to father's custody. Four days later, the Department made an unannounced visit to the home. Father was not home. R.S. was with mother and another individual who had not been approved to supervise mother's visits. Due to the violation of the circuit court's orders and the lack of relative placement options, the Department removed R.S. from the home and placed him in foster care. Following the entry of the emergency and preliminary removal orders, the JDR court adjudicated that R.S. was abused or neglected and entered a dispositional order.

Approximately six weeks after R.S. entered foster care, mother gave birth to S.S., who was born premature and substance exposed. Both mother and S.S. tested positive for cocaine. Considering the family's history and the removal of R.S., the JDR court entered emergency and preliminary removal orders for S.S., and the Department placed her with R.S. in the same foster home. The JDR court subsequently adjudicated that S.S. was abused or neglected and entered a dispositional order.

After the children entered foster care, the Department established requirements mother had to complete before she could be reunited with R.S. and S.S. Mother had to participate in substance abuse and mental health treatment. She also had to submit to random drug screenings. In the Spring of 2021, mother tested positive for drugs once and two other tests were presumed positive because "the temperature was not within range for testing." The Department had difficulty conducting additional drug screens because mother lost her identification card and refused a hair follicle test for cultural reasons and an oral swab test due to allergies.

In addition, the Department referred mother for a parental capacity assessment, which she completed in 2021. Mother informed the evaluator, Dr. Mohamed Mansaray, of her family history. When mother was 16 years old, she came to the United States as a refugee from Africa. But as a young child, rebels had kidnapped her and forced her to become a child soldier in Sierra Leone. Her captors forced her to use cocaine daily and sexually abused her; she became pregnant at age ten.

Mother suffered from nightmares and flashbacks from her childhood; she also had trouble focusing and sleeping. She indicated that she heard and saw things that others did not, but this stopped after she started taking medication. Mother had started counseling, and even though she stopped attending, she continued to take her medication. She also reported that she had stopped using cocaine and had been sober since January 2021. Mother admitted that "stress and sadness" trigger her substance abuse.

Mother also discussed her relationship with father. Mother reported that father had been physically and verbally abusive toward her; once, he hit her in the head with a hammer. She claimed that she had ended their nine-year relationship after the children entered foster care.

At the conclusion of mother's assessment, Dr. Mansaray opined that mother's childhood trauma greatly affected her and her decision-making ability. He diagnosed mother with post-traumatic stress disorder and "substance use disorder, severe." Although mother interacted "appropriately" with R.S. and S.S. and had a "strong desire to be a good parent," Dr. Mansaray expressed concern about her stability because she was "early in her recovery" and had not addressed her history of trauma. She also lacked parenting skills, which admittedly could be attributed to her childhood, and had "very poor" cognitive functioning. Dr. Mansaray opined that mother was "at a moderate to high level of risk for child neglect." Dr. Mansaray

recommended that mother participate in substance abuse treatment, parenting classes, parenting coaching, individual psychotherapy, and case management services.

The Department referred mother to a substance abuse therapist, a trauma therapist, and case management services. Mother felt "overwhelmed" and said there were "too many services." She did not complete the case management assessment. In 2021, her participation in substance abuse treatment was "inconsistent." She stopped psychotherapy after a few sessions with the trauma therapist because "it was too much for her."

The Department also required mother to have stable housing and employment. Mother and father had lived together in the same home for eight years before the Department's involvement. Mother left the home and stayed in a shelter for a while before she moved to a one-bedroom apartment in March 2021. While the children were in foster care, mother worked as a home health care worker, but she was unemployed at the time of the circuit court hearing.

The Department also offered weekly supervised visitation and parent coaching to mother. The Department arranged for transportation for mother to and from her visitations. Although mother's interactions with the children improved over time, her visitations never progressed beyond supervised visits because of her "inconsistency" with substance abuse treatment and drug screening and her refusal to participate in trauma therapy.

As a result of mother's failure to comply with the services and address her substance use and mental health, the JDR court approved the foster care goal of adoption and terminated mother's parental rights. Mother appealed to the circuit court.

On March 21, 2022, the parties appeared before the circuit court. The Department explained its "four areas of concern" with mother's ability to care for the children, namely "ongoing mental health and substance abuse issues," "housing stability issues," the "lack of awareness and insight into what brought both children into [foster] care," and the "history of

domestic violence between the two parents." Moreover, the nature and extent of the parents' relationship was "unclear."

After the JDR court terminated her parental rights, mother's participation and engagement with the Department's services improved. Mother's "long history of trauma," however, caused her to self-medicate with cocaine when she was stressed. Therefore, the Department was skeptical that mother could have a "sustained period of sobriety and stability" and remained concerned that she would revert to self-medicating to cope with the stress of parenting, employment, and health situations.

The Department presented evidence that R.S. and S.S. had been placed in the same foster home and were doing well. Both were current with their vaccinations and attended day care together. The Department explained that it was pursuing adoption because mother had only just started addressing her "long history of trauma" and substance abuse.

After the Department presented its evidence, mother's trauma therapist, Dr. Markeya Jones, testified. Mother started seeing Dr. Jones in the Fall of 2020 but stopped after four weeks and did not resume therapy until the Fall of 2021, just a few months before the circuit court hearing. Dr. Jones diagnosed mother with "complex trauma," resulting from her childhood. Mother's coping skills included substance abuse. Dr. Jones noted that mother had "a lot of flashbacks and thoughts about what happened to her," and she was "work[ing] through those moments." They were focusing on mother's traumatic history and discussing ways of coping with stress, other than substance use. Dr. Jones opined that mother required at least six months of consistent therapy to make progress in addressing her trauma history.

Mother testified about her weekly participation in counseling and substance abuse treatment; she also continued to take her prescribed medications. After submitting to a drug test as recently as one month before the circuit court hearing, mother indicated that she had tested

negative and been "drug-free" for 14 months. Mother emphasized how much she enjoyed visiting with the children and that she wanted them returned to her.

After hearing all the evidence and arguments, the circuit court considered the length of time the children had been in foster care and that mother still needed "more time" before she was able to care for them. Thus, the circuit court found that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2) and approve the foster care goal of adoption. Mother appeals.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's orders terminating her parental rights and approving the foster care goal of adoption.[4] The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if:

---

[4] The Department argues that mother did not preserve her assignments of error because she did not move to strike the evidence. We disagree. "This Court has held that '[c]ounsel may meet the mandates of Rule 5A:18 in many ways. For instance, counsel may make clear the ground for [her] objection in a motion to strike the evidence or in closing argument.'" *Moncrief v. Div. of Child Support Enf't ex rel. Joyner*, 60 Va. App. 721, 729 (2012) (quoting *Lee v. Lee*, 12 Va. App. 512, 515 (1991)). Furthermore, if "a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal." *Canales v. Torres Orellana*, 67 Va. App. 759, 771 (2017) (en banc) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). Mother preserved her arguments in her closing

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Mother contends that the Department failed to prove by clear and convincing evidence that she had failed to substantially remedy the conditions that led to or required the children's continuation in foster care.[5]  She emphasizes that she had made "substantial progress" with her therapy, and if given more time, she could demonstrate her progress.

"[R]egardless of [which] subsection of Code § 16.1-283 the Department proceeds under, it must prove each of its allegations by clear and convincing evidence before the . . . court may terminate a parent's parental rights to his or her child." *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 347 (2012).  "We have defined clear and convincing evidence as 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *C.S. v. Va. Beach Dep't of Soc. Servs.*, 41 Va. App. 557, 565-66 (2003) (quoting *Gifford v. Dennis*, 230 Va. 193, 198 n.1 (1985)).  "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and *unequivocal*." *Id.* at 566 (quoting *Gifford*, 230 Va. at 198 n.1); *see also In re Scott*, 297 Va. 166, 185 (2019).

---

arguments, and the circuit court was well aware of mother's position challenging the termination of her parental rights.

[5] In mother's opening brief and reply brief, she also argues that the circuit court violated her due process rights and the Department failed to provide her with reasonable and appropriate services.  Rule 5A:20(c) requires us to hold that these arguments are waived because they were not part of mother's assignments of error. *Fox v. Fox*, 61 Va. App. 185, 202 (2012).

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).  Mother had a traumatic childhood, which she occasionally relived through flashbacks.  She also had a history of relying on cocaine to self-medicate when experiencing stress.  Although mother had started trauma therapy, her therapist opined that she required at least six months of consistent therapy to make progress in dealing with her trauma history.  Moreover, mother had not consistently engaged with substance abuse treatment and case management services until a few months before the circuit court hearing.  Mother was "early in her recovery" and had not demonstrated a "sustained period of sobriety and stability."

During the trial, mother argued that she needed "more time to continue to work on her [parenting] skill set," especially considering her "massive history of trauma" and "massive history of self-medicating."  The circuit court acknowledged mother's request for "more time," but also considered that the children had been in foster care for "about 18 months."  In fact, both children had been in foster care for most of their lives.  "Code § 16.1-283(C)(2)'s twelve-month time limit 'was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement.'"  *Thach*, 63 Va. App. at 171 (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003)).

The Department had provided mother with numerous services, including referrals for therapy, substance abuse treatment, and case management services; however, mother only belatedly committed to trauma therapy and needed at least an additional six months of treatment.  She had not resolved her substance abuse, nor demonstrated sufficient stability.  Indeed, despite

- 9 -

the services she received, she had not progressed from unsupervised visits with the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

## CONCLUSION

Considering the totality of the circumstances, the circuit court did not err in finding that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2) and approve the foster care goal of adoption.

*Affirmed.*